IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMEL L. PURDY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  22-2048 |
| Commissioner of Social Security | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                          October  11, 2023

Jamel L. Purdy ("Plaintiff") seeks review of the Commissioner's decision denying

his applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI").  For the reasons that follow, I conclude that the decision of the

Administrative Law Judge ("ALJ") is supported by substantial evidence.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB and SSI on June 10, 2019, alleging that his

disability began on August 1, 2016, as a result of a sports hernia and tendonitis.[1]  Tr. at

90, 97, 106, 115, 233, 240, 255.[2]  Plaintiff's applications were denied initially, id. at 126-

---

[1]At the time of his application, Plaintiff only alleged disability as a result of a
sports hernia and tendonitis.  Tr. at 255.  However, at the administrative hearing,
Plaintiff's representative explained that Plaintiff also struggles with anxiety and
depression and he was working with the University of Pennsylvania to obtain a formal
mental health evaluation.  Id. at 38.  In light of the pandemic, the ALJ agreed to leave the
record open until December 14, 2020, for the submission of additional records.  Id. at 42.

[2]Plaintiff's previous applications for DIB and SSI in August 2010 were denied on
initial review.  Tr. at 91, 98, 107, 116.  Plaintiff's request for a hearing was dismissed by
an ALJ on April 27, 2012, when Plaintiff withdrew his request.  Id. at 89.

To be entitled to DIB, Plaintiff must establish that he became disabled on or
before his date last insured.  20 C.F.R. § 404.131(b).  The Certified Earning Record

29, 130-33, and on reconsideration, id. at 142-45, 146-49, and Plaintiff requested a

hearing before an ALJ.  Id. at 157-58.  After holding a hearing on November 13, 2020, id.

at 34-85, the ALJ found on March 30, 2021, that Plaintiff was not disabled.  Id. at 15-29.

On April 6, 2022, the Appeals Council denied Plaintiff's request for review, id. at 1-3,

making the ALJ's March 30, 2021 decision the final decision of the Commissioner.  20

C.F.R. § 404.981, 416.1472.[3]

Plaintiff commenced this action in federal court on May 25, 2022, Doc. 1, and the

matter is now fully briefed and ripe for review.  Docs. 8, 11-12.[4]

## II.    LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected tolast for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.    Whether the claimant is currently engaged in
> substantial gainful activity;

---

indicates and the ALJ found that Plaintiff was insured through March 31, 2021.  Tr. at 18, 247.

[3]Plaintiff submitted a brief and additional mental health treatment evidence to the Appeals Council.  Tr. at 6, 8-9, 345-60.  The Appeals Council acknowledged receipt of the additional evidence, but found that there was not a "reasonable probability that it would change the outcome of the decision."  Id. at 2.

[4]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 4.

      2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;

      3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

      4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and

      5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019)

(substantial evidence "means only – 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305

U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181

F.3d at 431.

III.    **DISCUSSION**

A.    **ALJ's Findings and Plaintiff's Claims**

The ALJ found that Plaintiff suffered from the severe impairments of hernia,

unspecified depressive disorder, and unspecified anxiety disorder; and the non-severe

impairments of mild discogenic disease and disc space narrowing, anemia,

rhabdomyolysis,[5] diarrhea and vomiting.  Tr. at 18-20.  In addition, the ALJ found that

the record was insufficient to establish the medically determinable impairments of

diabetes, a visual impairment, a shoulder impairment, marijuana use disorder, or an

impairment related to Plaintiff's complaints of shortness of breath.  Id. at 20.  The ALJ

found that Plaintiff did not have an impairment or combination of impairments that met

the Listings, id. at 21, and that he had the RFC to perform medium work, except that he

could only occasionally climb ladders, ropes, and scaffolds; frequently perform other

postural movements; frequently push/pull with upper and lower extremities; and perform

---

[5]Rhabdomyolysis is the disintegration or dissolution of muscle, associated with the excretion of myoglobin, the oxygen-transporting pigment of muscle, in the urine. Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 1223, 1637.

only simple routine tasks and make simple work-related decisions.  Id. at 23.  Based on

the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not

perform his past relevant work as janitor, but could perform the jobs of sweeper/cleaner,

machine feeder, and bagger.  Id. at 27-28.  Therefore, the ALJ found that Plaintiff was

not disabled.  Id. at 28.

Plaintiff claims that the ALJ erred in failing to (1) consider or discuss his

psychiatric diagnosis of psychosis in determining his RFC, (2) develop the record with

respect to Plaintiff's mental health impairments, (3) include all of Plaintiff's limitations

in determining his RFC and questioning the VE, and (4) assess Plaintiff's abilities on a

function-by-function basis or determine the length of time Plaintiff could perform

activities.  Doc. 8.  Defendant responds that the ALJ's decision is supported by

substantial evidence.  Doc. 11.  Plaintiff filed a reply providing further argument in

support of his claims.  Doc. 12.

### B.      Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on July 16, 1972, making him 44 years of age on August 1,

2016, the date on which he alleges he became disabled, and 48 years of age on March 30,

2021, the date of the ALJ's decision.  Tr. at 233, 240.  Plaintiff obtained his general

equivalency diploma in 1991 and completed electrician training in 1999.  Id. at 256.

Plaintiff worked in housekeeping/maintenance at a hotel and a condominium complex,

but stopped working in August of 2016.  Id. at 46-48, 256.  Plaintiff does not have a

home or apartment, lived in his car for some time, and, at the time of the administrative

hearing, was staying in a locker area in an apartment complex where a friend is the supervisor.  Id. at 61-62.

Plaintiff explained that he was diagnosed with a hernia in 2016, but that the repair surgery was postponed because the pre-surgical testing revealed he was anemic.  Tr. at 51.  After having the surgery, the doctor told Plaintiff not to lift anything over 12 pounds. Id. at 54.  In addition, Plaintiff explained that he suffers from numbness and tingling in the legs, feet and fingertips, and he is unable to make a fist with his left (dominant) hand and has difficulty with his grip.  Id. at 52, 62-63.  Plaintiff believes that foot surgery he had in 2002 and 2003 resulted in a muscle injury.  Id. at 53.  He also explained that when he is sitting, his feet feel like they are in cold cement.  Id. at 63.

Plaintiff described two shoulder surgeries (in 2005 and 2009) to repair torn ligaments for which the surgeon inserted titanium rods.  Tr. at 65-66.  Despite therapy, he continues to complain of problems with his shoulders, and explained that he has difficulty reaching overhead.  Id.  Plaintiff also discussed lower back pain that began when he was shoveling snow at the condominium complex where he worked.  Id. at 66.

Plaintiff also complained that depression and anxiety contributed to his disability, making him frustrated and jumpy, and causing difficulty with paying attention.  Tr. at 55. Plaintiff described feeling like he is being watched and judged when he is around other people, causing him to be nervous and scared.  Id. at 60.  In addition, Plaintiff complained of vision problems and having to hold paperwork about 18 inches from his face so that he can read it.  Id. at 64.  Plaintiff also testified that after the hernia surgery and a colonoscopy, he has to use the bathroom frequently due to diarrhea.  Id. at 69.

A VE classified Plaintiff's work as a janitor as medium work as generally performed, but heavy to very heavy as Plaintiff performed the job.  Tr. at 73-74.  The ALJ asked the VE to consider someone of Plaintiff's age, education, and work experience, who was limited to medium work and only able to occasionally climb ladders, ropes, or scaffolds; who could frequently perform other postural movements, but was limited to frequent pushing and pulling with the upper and lower extremities, who is limited to simple routine tasks and making simple work related decisions.  Id. at 74.  The VE testified that Plaintiff would not be able to perform his work as a janitor, but could perform the jobs of sweeper/cleaner, machine feeder, and bagger.  Id. at 75.  The VE also identified the jobs of laundry folder, garment sorter, and office helper at the light exertional level.  Id. at 75-76.

When Plaintiff's representative asked the VE what effect the inability to continuously stand would have on the ability of someone to perform the jobs identified, the VE testified that such limitation would probably eliminate the laundry folder job.  Tr. at 78.  Similarly, the VE testified that someone who could not handle, finger, and feel would not be able to perform the job of office helper.  Id. at 81-82.

### C.    Summary of the Medical Record

Plaintiff has a history of shoulder surgery and foot surgery prior to his alleged disability onset date.  Tr. at 362, 584.  The treatment notes in the administrative record begin on June 29, 2018, when Plaintiff was seen at the University of Pennsylvania Emergency Department ("Penn Emergency") for lower back pain radiating into his legs, numbness, and gait problems.  Id. at 362-67.  On examination, Denise Feeley, CRNP,

noted tenderness, decreased range of motion, and pain in Plaintiff's lumbar spine, and an abnormal gait.  Id. at 363-64.  Plaintiff was discharged with Flexeril and Naproxen,[6] instructions for back exercises, and told to use ice and heat for the following 48-72 hours. Id. at 365.

On June 5, 2019, Plaintiff was seen at Greater Philadelphia Health Action, Inc., ("GPHA"), complaining of back and pelvic pain and urinary symptoms.  Tr. at 386-88. On examination, Adam Rom, M.D., noted a left inguinal hernia and ordered an x-ray of Plaintiff's back and ultrasound of his abdomen.  Id. at 389.  The x-ray performed showed mild L4-5 and L5-S1 discogenic disease, and the ultrasound confirmed a small left inguinal hernia.  Id. at 393, 394.  Plaintiff returned to Penn Emergency on July 9 and 10, 2019, complaining of abdominal pain and seeking a referral for a surgeon to perform the hernia surgery.  Id. at 381, 401.[7]

Testing done in preparation for the hernia surgery revealed that Plaintiff had "profound iron deficiency anemia" for which he received two iron transfusions.  Tr. at 410, 420.  On September 18, 2019, Plaintiff returned to GPHA complaining of diarrhea. Id. at 420.  Dr. Rom diagnosed Plaintiff with prediabetes, ordered additional bloodwork, and referred Plaintiff to a gastroenterologist.  Id. at 422.  On September 20, 2019,

---

[6]Flexeril (generic cyclobenzaprine) is a muscle relaxant.  See https://www.drugs.com/flexeril.html (last visited Sept. 20, 2023).  Naproxen is a nonsteroidal anti-inflammatory drug used to treat pain and inflammation.  See https://www.drugs.com/naproxen.html (last visited Sept. 20, 2023).

[7]At the July 9 visit, Plaintiff began cursing at the nurse about the wait time because he was missing the All Star baseball game, and left without being evaluated.  Tr. at 381.

gastroenterologist Manoj Amrut Shirodkar, M.D., ordered an endoscopy and colonoscopy.  Id. at 407.  On October 23, 2019, Plaintiff followed up with Dr. Rom for medication refills and moderate neck pain radiating into his upper arms.  Id. at 416.  Dr. Rom prescribed Flexeril for Plaintiff's neck pain.  Id. at 419.

On November 18, 2019, Sean Harbison, M.D., performed the hernia repair.  Tr. at 442.  On March 2, 2020, Plaintiff began primary care treatment at Penn's Rock Primary Care.  Id. at 425-29.  On examination, nurse practitioner Jordan Mount indicated that Plaintiff's lower left quadrant was tender at the hernia incision site, which had healed with no signs of infection.  Id. at 427.  All other examination findings were normal.  Id. at 426-27.  Because Plaintiff was suffering an itching reaction, the doctor recommended that he refrain from using Flexeril.  Id. at 428.  The doctor advised Plaintiff to continue on his iron supplement regimen, noted that Plaintiff used cannabis daily, and provided information about obtaining a medical cannabis card.  Id.  On July 14, 2020, Plaintiff returned to Penn's Rock complaining of occasional numbness and tingling in his hands and fingers.  Id. at 464.  On examination, Plaintiff had full range of motion in his extremities.  Id.

On November 22, 2020,[8] Plaintiff was treated at Penn Emergency for fatigue and diagnosed with generalized weakness and rhabdomyolysis, and was released the same day.  Tr. at 529.  The following day, he went to Jefferson Hospital's Emergency

---

[8]Although the administrative hearing took place on November 13, 2020, the ALJ stated that he would leave the record open for the submission of additional evidence until December 14, 2020.  Tr. at 42.

Department complaining of shortness of breath.  Id. at 556.  Sepehr Sedigh Haghighat, M.D., and Stuart Dilg, M.D., diagnosed Plaintiff with exhaustion and released him.  Id. The following day, Plaintiff went to Lankenau's Emergency Department complaining of shortness of breath.  Id. at 568.  After performing an ECG, chest x-ray, and bloodwork, David S. Patchefsky, M.D., released Plaintiff.  Id.

On December 3, 2020, Adam J. Sagot, D.O., conducted a psychiatric evaluation. Tr. at 581-88.  Plaintiff reported ongoing depression and anxiety, and Dr. Sagot noted that Plaintiff exhibited paranoid thought content regarding his safety and delusional qualities that he could read other people's thoughts.  Id. at 583, 586.  Dr. Sagot diagnosed Plaintiff with Depressive Disorder unspecified, Anxiety Disorder unspecified, and Psychotic Disorder unspecified.  Id. at 586.  Dr. Sagot recommended that Plaintiff (1) participate in outpatient psychiatric therapy for management of depression, anxiety, and psychosis, (2) discuss with his mental health provider the need for prescription medication for psychotic delusions, paranoia, depression, and anxiety, (3) refrain from substance use or prescription drug abuse, and (4) connect with social work/case management services to help him receive services in the community.  Id. at 587.  Dr. Sagot considered Plaintiff disabled due to his present and ongoing mental illness, including his contention that he can read others' thoughts and his paranoia.  Id. at 587-88.

In an accompanying Medical Source Statement, Dr. Sagot found that Plaintiff had mild limitations in his abilities to understand, remember, and carry out simple and complex instruction; and moderate limitations in his abilities to make judgments on simple and complex work-related decisions, interact appropriately with the public,

supervisors, or co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.  Tr. at 589-90.

Dr. Sagot evaluated Plaintiff again on June 14, 2021, about ten weeks after the ALJ's decision, and prepared an addendum report.  Tr. at 8-9.  Plaintiff submitted the report to the Appeals Council, which determined that "there was not a reasonable probability that [the report] would change the outcome of the decision."  Id. at 2.

On October 30, 2019, at the initial consideration stage, Candelaria Legaspi, M.D., found that Plaintiff did not suffer from a severe impairment based on her review of the medical records.  Tr. at 93-95, 100-02.  On April 16, 2020, at the reconsideration level, Chankun Chung, M.D., also found that Plaintiff's physical impairments were not severe.  Id. at 110-12, 119-20.  At the reconsideration level, Shelley Ross, Ph.D., found on April 8, 2020, that there were no mental health diagnoses in the medical evidence of record.  Id. at 111-12.

### D.   Plaintiff's Claims

#### 1.   Diagnosis of Psychosis

Plaintiff complains that the ALJ failed to consider or discuss Dr. Sagot's diagnosis of psychosis in analyzing Plaintiff's mental health impairments.  Doc. 8 at 7-14; Doc. 12 at 2-6.  Defendant responds that the ALJ acknowledged Dr. Sagot's diagnosis of an unspecified psychotic disorder and properly based her RFC assessment on the evaluation findings, not the diagnosis.  Doc. 11 at 6-9.

a.      ALJ's consideration of Dr. Sagot's assessment

Before embarking on an analysis of the ALJ's discussion of the evidence at each step of the sequential evaluation, I will address the ALJ's consideration of Dr. Sagot's evaluation and Medical Source Statement.  During his evaluation, Dr. Sagot noted that "Plaintiff describes depressed and anxious mood as well as concerns for paranoid ideations with psychotic features that have resulted in increased isolating behaviors, difficulty trusting others, and thoughts that there are individuals . . . that are conspiring against him." Tr. at 586.  The doctor found that Plaintiff would exhibit tangential qualities, but was easily redirected; had paranoid ideation regarding his safety; and exhibited delusional qualities that he had abilities to read other people's thoughts. Id. The doctor diagnosed Plaintiff with depressive disorder unspecified, anxiety disorder unspecified, and psychotic disorder unspecified, and opined that Plaintiff was disabled due to his mental illness. Id. at 587-88.  In a Medical Source Statement, the doctor found Plaintiff had mild or moderate limitations in each of the abilities to do work-related activities. Id. at 589-90.[9]

The governing regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the

_____

[9]The form uses a five-point scale for the person's ability to perform each activity independently, appropriately, and effectively on a sustained basis; none (able to function), mild (slightly limited), moderate (fair), marked (seriously limited), and extreme (unable to function). Tr. at 589.

disability program.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ found Dr. Sagot's opinion partially persuasive, noting that "it is not entirely well-supported" by Dr. Sagot's own evaluation, nor consistent with the evidence from other sources or Plaintiff's lack of mental health treatment.  Tr. at 26.  In addition, the ALJ noted that Dr. Sagot's opinion is based on Plaintiff's subjective report of symptoms.  Id.  The ALJ's reasoning with respect to Dr. Sagot's assessment is supported by substantial evidence.  On mental status examination, Dr. Sagot noted that Plaintiff was calm and cooperative, but guarded at times, with depressed mood.  Id. at 585.  Plaintiff exhibited tangential qualities, but was easily redirected.  Id. at 586.  He exhibited paranoid ideations and delusional thoughts that he could read other people's thoughts.  Id. His short- and long-term memory were intact, but his concentration, insight, and judgment were poor.  Id.  In contrast to the abnormal findings in Dr. Sagot's assessment, the vast majority of Plaintiff's treatment notes with various physicians indicate that

Plaintiff was not suffering from any mental symptoms.  See id. at 364 (6/29/18 - Penn

Emergency - normal mood and affect, normal behavior), 409-10 (9/20/19 - Dr. Shirodkar

– mood and affect normal; Plaintiff denied depression, hallucinations, suicidal ideas and

was not nervous or anxious), 422 (9/18/19 - GPHA - appropriate mood and affect), 418

(10/23/19 - GPHA - same), 439 (11/25/19 - PHQ-9 score[10] of 3 indicating depression

severity is none or minimal).  Because the ALJ appropriately considered Dr. Sagot's

opinions and the ALJ's conclusions are supported by substantial evidence, I find no error

with respect to her consideration of the opinion evidence.

As previously mentioned, Plaintiff submitted an addendum to the Appeals Council

that Dr. Sagot prepared after a second evaluation of Plaintiff on June 14, 2021, after the

ALJ's decision.  Tr. at 8-9.  In the addendum, the doctor opined that Plaintiff was

disabled due to a psychotic disorder, unspecified, likely delusional disorder with paranoid

features, depressive disorder unspecified, anxiety disorder unspecified, and an

unspecified sleep disorder.  Id.  The Appeals Council concluded that there was not a

reasonable probability that this evidence would have changed the outcome of the case.

Id. at 2.

---

[10]The Patient Health Questionnaire-9 ("PHQ-9") asks the patient to report how
often in the prior two weeks he or she has been bothered by nine specific depressive
symptoms.  See https://www.apa.org/depression-guideline/patient-health-
questionnaire.pdf (last visited Sept. 20, 2023).  The patient uses a four-point scale to rate
each symptom:  not at all (0), several days (1), more than half the days (2), nearly every
day (3).  Id.  The total of the scores is used to determine the severity of depression:  1-4 is
minimal; 5-9 is mild; 10-14 is moderate, 15-19 is moderately severe; and 20-27 is severe.
https://med.stanford.edu/fastlab/research/imapp/msrs/_jcr_content/main/accordion/accord
ion_content3/download_256324296/file.res/PHQ9%20id%20date%2008.03.pdf (last
visited Sept. 20, 2023).  Plaintiff scored a 3, indicating minimal depression.  Tr. at 439.

The Third Circuit has held that evidence presented for the first time to the Appeals Council cannot be considered by the court in determining if the ALJ's decision is supported by substantial evidence.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  In Matthews, the claimant submitted a vocational report to the Appeals Council stating that the claimant lacked the skills to perform the jobs identified by the VE at the administrative hearing and opined that Plaintiff's impairments would preclude her from performing any work.  Id. at 591.  The District Court declined to consider the new evidence because Plaintiff failed to show good cause for failing to present the evidence to the ALJ.  Id.  The Third Circuit affirmed.

> [E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence.  See Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991) (citing United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963)).  No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.  No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ.  Instead, the Act gives the district court authority to remand the case to the Commissioner, but only if the claimant has shown good cause why such new and material evidence was not presented to the ALJ.

Matthews, 239 F.3d at 594; see also Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 120 (3d Cir. 2012) ("Even though 'evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals [C]ouncil has denied review.'") (quoting Matthews, 239 F.3d at 593).

Sentence six of 42 U.S.C. § 405(g) governs review of additional evidence not submitted to the ALJ and requires "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record." 42 U.S.C. § 405(g) (sentence six). Here, Plaintiff has not specifically requested remand pursuant to sentence six. However, his reliance on the new evidence raises the issue.

To be "new" the evidence must not have been "in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see also Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). To be "material" the evidence must be "relevant and probative," meaning that it creates a reasonable probability that it would have changed the ALJ's decision had it been presented. Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Lastly, a claimant must demonstrate "good cause" for his failure to acquire the present post-hearing evidence to the ALJ in a timely manner. Id.; Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991). Claimants bear the burden of showing that the three requirements are satisfied. 42 U.S.C. § 405(g) (sentence six).

Here, Dr. Sagot's addendum is not material to the ALJ's disability determination. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Szubak, 745 F.2d at 833. Although Dr. Sagot prefaces his addendum that it is "to correct any misunderstandings of my earlier report and to amplify my prior assessment of Mr.

16

Purdy's mental health," the doctor conducted another assessment and considered symptomatology Plaintiff evidenced after his initial evaluation.  See tr. at 8 ("some group did something untoward to his knee during a hernia repair operation in May 2021," and belief that a Phillies broadcaster was communicating with him during a game the prior day).[11]  Moreover, as the Appeals Council found, Plaintiff has failed to establish that there is a reasonable probability that the second report would have changed the ALJ's decision.  As previously discussed, the ALJ appropriately considered Dr. Sagot's opinion in light of the record evidence, including his own mental status examination, evidence from other sources, and Plaintiff's complete lack of any mental health treatment.  Id. at 26.  This conclusion is supported by substantial evidence.  Nothing in the addendum alters that analysis.

> b.  ALJ's consideration of diagnosis of psychosis

I will now return to Plaintiff's claim that the ALJ failed to properly consider the diagnosis of psychosis.  The Commissioner's regulations require ALJs to perform an assessment, called the psychiatric review technique ("PRT"), to evaluate a claimant's mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  This assessment determines the severity of the impairment(s), which is then used in shaping the RFC assessment.  See Ramirez v. Barnhart, 372 F.3d 546, 551-54 (3d Cir. 2004).  The RFC assessment must account for all limitations identified in the ALJ's decision, including those found in the

---

[11]It is unclear if Plaintiff underwent a second hernia repair surgery.  The evidence in the record establishes that Dr. Harbison performed the hernia repair on November 18, 2019.  Tr. at 442.

PRT.  See id.; see also Kich v. Colvin, 218 F. Supp.3d 342, 357-59 (M.D. Pa. 2016)

("courts will remand where an ALJ failed to articulate why credibly established PRT

limitations were not accounted for in the RFC").

     In reviewing the medical evidence, the ALJ acknowledged Dr. Sagot's diagnosis

of an unspecified psychotic disorder and the symptoms from which it arose, tr. at 25, but

did not mention the diagnosis when addressing the severity of Plaintiff's impairments or

include it in her discussion of the Listings.  See id. at 21 (reviewing mental health listings

12.04 - depressive disorder and 12.06 - anxiety disorder, but failing to consider 12.03 -

schizophrenia and other psychotic disorders).  However, considering the ALJ's decision

as a whole, see Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ need not use

any particular format and decision should be read "as a whole"), I conclude that the

decision is supported by substantial evidence.

     With respect to severity, the ALJ's failure to find Plaintiff's psychotic disorder

severe at step two is harmless provided the ALJ considered the combined effects of all of

Plaintiff's impairments -- severe and nonsevere -- in determining Plaintiff's RFC.  See

Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2017) ("Because the

ALJ found in [the plaintiff's] favor at Step Two, even if he had erroneously concluded

that some of her other impairments were non-severe, any error was harmless.") (citing

Rutherford, 399 F.3d at 553).  Therefore, my focus will shift to the ALJ's consideration

of the evidence in determining Plaintiff's RFC later in this Report.

     With respect to the Listings, although the ALJ did not include any analysis of

Listing 12.03 (schizophrenia and other psychotic disorders), the same analysis of the

paragraph B criteria is used in considering that Listing and the Listings the ALJ did address (12.04 (depression) and 12.06 (anxiety)).[12]  In analyzing the paragraph B criteria, which are the functional criteria of the Listings, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself; and moderate limitation in concentrating, persisting, or maintaining pace.  Tr. at 21-22.  In the analysis of each of these four functional areas, the ALJ relied on Dr. Sagot's examination findings, and acknowledged Plaintiff's paranoid ideation and delusional thoughts.  Id.[13]  Moreover, in Dr. Sagot's Medical Source Statement, he found that Plaintiff suffered from only mild or moderate limitations in the abilities to do work-related activities.  Id. at 589-90.  Because the ALJ considered Dr. Sagot's examination findings, including symptoms attributable to Plaintiff's psychotic disorder, I conclude that the ALJ's decision in regard to the paragraph B criteria is supported by substantial evidence.

Turning to the RFC assessment, the ALJ addressed the limitations imposed by Plaintiff's mental impairments by limiting him to simple routine tasks and simple work-related decisions.  Tr. at 23.  As previously noted, Dr. Sagot found that Plaintiff suffered

---

[12]Listing 12.03 is met when the claimant meets both the paragraphs A and B criteria or the paragraphs A and C criteria of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03.  Because Purdy does not have a medically documented history of the existence of a psychotic disorder lasting for two years and ongoing mental health treatment, he cannot establish the C criteria of listing 12.03.  Id. § 12.03(C).

[13]I note that Plaintiff does not contend that the ALJ's discussion of the paragraph B criteria was flawed with respect to the Listings for anxiety and depression.  Rather, he complains that the ALJ did not conduct a similar analysis with respect to the Listing applicable to psychosis.

from only mild or moderate limitations in his Medical Source Statement.  Id. at 589-90.

Nevertheless, the ALJ looked beyond Dr. Sagot's Medical Source Statement and relied

on his examination findings in crafting his RFC assessment.  For example, although Dr.

Sagot found that Plaintiff had only mild limitation in his abilities to understand,

remember, and carry out complex instructions, id. at 589, the ALJ noted that Plaintiff's

concentration was poor "as evaluated by the Serial-7 assessment which was completed

with greater than four errors," id. at 22 (citing id. at 586), corresponding with the

limitation to simple, routine tasks and simple work-related decisions.  Thus, I find no

error in the ALJ's consideration of Plaintiff's mental impairments in crafting the RFC

assessment.

2.   <u>Duty to Develop the Record</u>

Plaintiff also complains that, with respect to his mental health impairments, the

ALJ failed to develop the record.  Doc. 8 at 14-21.  Plaintiff contends that the evidence in

the record, including his homelessness after a productive career and documented mental

health issues, should have been sufficient to raise questions requiring a mental health

assessment and a meeting with agency reviewers.  Id. at 16.  Defendant responds that the

record contained sufficient information for the ALJ to consider Plaintiff's mental health

impairments.  Doc. 11 at 9.

"It is the ALJ's duty to investigate the facts and develop the arguments both for

and against granting benefits."  Sims v. Apfel, 530 U.S. 103, 111 (2000) (citing

Richardson v. Perales, 402 U.S. 389, 400-01 (1971)); see also Ventura v. Shalala, 55 F.3d

900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social

20

security cases.").  When the evidence is incomplete or insufficient to render a decision, the ALJ may recontact medical sources, request additional existing evidence, request a consultative examination, and/or ask the claimant or others for additional information.  20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2).

Here, contrary to Plaintiff's assertion that "a cursory review of the overall record . . . would clearly raise red flags requiring further agency assessment" of Plaintiff's mental impairments, Doc. 8 at 16, as previously discussed, the vast majority of the treatment notes do not evidence any mental impairment.  See tr. at 364 (6/29/18 - Penn Emergency - normal mood and affect, normal behavior), 409-10 (9/20/19 - Dr. Shirodkar – mood and affect normal; Plaintiff denied depression, hallucinations, suicidal ideas and was not nervous or anxious), 422 (9/18/19 - GPHA - appropriate mood and affect), 418 (10/23/19 - GPHA - same), 439 (11/25/19 - PHQ-9 score of 3 indicating depression severity is none or minimal).  Moreover, the assertion that the ALJ failed to develop the record is unfounded.  Upon learning that Plaintiff's representative was attempting to explore Plaintiff's mental health issues at the University of Pennsylvania, the ALJ agreed to leave the record open for 30 days to allow Plaintiff to provide additional evidence.  Id. at 42. The ALJ subsequently received and considered Dr. Sagot's examination findings and Medical Source Statement, and considered Dr. Sagot's evidence in her decision.  Id. at 26-27, 581-91.  The ALJ found Dr. Sagot's opinion partially persuasive and properly considered the doctor's opinion as previously discussed.

Plaintiff also argues that the ALJ's failure to develop the record affected the VE testimony because the ALJ "never posed a single question relating to [Plaintiff's] mental

health when questioning the VE."  Doc. 8 at 19; see also Doc. 12 at 6-7.  Thus, Plaintiff

argues that the hypotheticals posed to the VE did not include all of Plaintiff's credibly

established limitations.  Id.  Contrary to this argument, the ALJ's RFC assessment limited

Plaintiff to simple, routine tasks and simple work-related decisions.  Id. at 23; see also id.

at 74 (hypothetical).  These limitations are directly related to Plaintiff's difficulty with

concentration.  As previously discussed, the ALJ properly considered the mental health

evidence and included limitations supported by the record in the RFC assessment and

hypotheticals.[14]

### 3.    Substantial Evidence

Plaintiff argues that the ALJ's determination that he is not disabled is not

supported by substantial evidence and that the ALJ's RFC assessment does not assess his

work-related abilities on a function-by-function basis, and specifically complains that the

ALJ failed to consider limitations with his left-hand grip, numbness in his extremities,

and pelvic pain aggravated by prolonged sitting.  Doc. 8 at 23.

Defendant responds generally that the ALJ properly considered Plaintiff's physical

impairments, referring only to Plaintiff's hernia.  Doc. 11 at 9.

---

[14]In the reply brief, it appears that Plaintiff's representative is confusing the
functions of the VE and the ALJ when he argues that "the [VE's] testimony never
assessed the actual limitations of [Plaintiff's] diagnosed impairments."  Doc. 12 at 7.  It is
not the job of the VE to determine the limitations based on the medical evidence.
"Surveying the medical evidence to craft an RFC is part of the ALJ's duties."
Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006).  Here, as previously
discussed, the ALJ's consideration of the mental health evidence and her RFC assessment
are supported by substantial evidence.

Plaintiff first complains that the ALJ failed to assess his abilities on a function-by-function basis because she failed to consider the amount of time Plaintiff could perform each function (sitting, standing, walking, lifting, carrying, pushing, and pulling).  Doc. 8 at 22-23.  Social Security Ruling ("SSR") 96-8p, upon which Plaintiff relies, states that "[t]he [RFC] assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, "Policy Interpretation Ruling Titles II and XVI:  Assessing [RFC] in Initial Claims," 1996 WL 374184, at *1 (July 2, 1996).  "The United States Court of Appeals for the Third Circuit, however, does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record."  Tenorio v. Berryhill, Civ. No. 16-3760, 2017 WL 4548057, at *4 (E.D. Pa. Oct. 11, 2017) (citing Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (table), No. 00-1995, slip. op at 4, 2000 U.S. App. LEXIS 38785, at *5-6 (3d Cir. Dec. 19, 2000) ("a function-by-function analysis is desirable," but SSR 96-8p "does not command ALJs to make specific, written findings on dozens of individual work function categories;" "the ALJ need only articulate how the evidence . . . supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record"); see also Brooks v. Saul, Civ. No. 19-2855, 2019 WL 7048794, at *7 (E.D. Pa. Dec. 23, 2019) (same); Gaul v. Barnhart, Civ. No. 07-351, 2008 WL 4082265, at *7 (E.D. Pa. Aug. 25, 2008) (same).

Here, Plaintiff argues that the ALJ failed to consider limitations with his left-hand grip, numbness in his extremities, and pelvic pain aggravated by prolonged sitting. Doc. 8 at 23. In determining a claimant's RFC and questioning the VE, an ALJ need not include all of a claimant's alleged physical and mental impairments; rather, the ALJ need only include those limitations that are supported by evidence of record. Moody v. Barnhart, 114 F. App'x 495, 502 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). Thus, the issue is whether Plaintiff's contentions are based on the medical evidence, and whether the ALJ adequately explained her consideration of the relevant evidence in discussing the severity of Plaintiff's impairments. Tr. at 18.

With respect to the numbness in Plaintiff's extremities, in his brief, Plaintiff relies on a July 14, 2020 treatment note from Penn's Rock wherein Plaintiff reported occasional numbness and tingling in his hands and fingers. Tr. at 464. In her decision, the ALJ explained that the examination of Plaintiff on that date revealed full range of motion of the extremities and "no clinical findings document numbness, reduced sensation, reduced strength, or otherwise." Id. at 18-19 (citing id. at 493, 495). Similarly, Plaintiff complained of pain and numbness in his lower back with pain radiating to his legs in June 2018. Id. at 361. The ALJ noted the examination results of decreased range of motion and pain, the diagnosis of "acute back pain," and the treatment with non-narcotic pain medication, exercises, and ice and heat. Id. at 18 (citing id. at 364-65). The ALJ also noted Plaintiff's complaints of back pain on June 5, 2019, id. at 18 (citing id. at 389), and at that visit Plaintiff also complained of pelvic pain aggravated by prolonged sitting. Id. at 386. The ALJ noted that the record indicates there were "no red flags" and subsequent

x-rays showed mild L4-L5 and L5-S1 discogenic disease and mild disc space narrowing. Id. at 18 (citing id. at 389, 393).  Thus, the ALJ properly considered the medical evidence and included limitations supported by the evidence in the record rather than Plaintiff's subjective complaints.

Finally, as part of his substantial evidence challenge, Plaintiff complains that the ALJ improperly relied on the Medical Vocational Rules ("the grids") in determining that he was not disabled.  Doc. 8 at 27.  Defendant responds that the ALJ properly used the grids as a framework for her decision-making.  Doc. 11 at 10.

When a claimant's limitations are solely exertional (sitting, standing, walking, lifting, carrying, pushing, and pulling), the grids control the disability determination.  20 C.F.R. §§ 404.1569a(b), 416.969a(b); Sykes v. Apfel, 228 F.3d 259, 263-65 (3d Cir. 2000) (discussing Heckler v. Campbell, 461 U.S. 458, 467-70 (1983)).  When a claimant's limitations are solely nonexertional, the grids are not dispositive, but instead provide the ALJ with a decisional framework to be considered with additional evidence to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1569a(c)(2), 416.969a(c)(2); see also id. Pt. 404, Subpt. P, App. 2 § 200.00(e)(1).  When a claimant has both exertional and nonexertional limitations, the ALJ must first determine if the claimant is disabled based on his or her exertional limitations alone, utilizing the grids. Id. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).  If the grids do not direct a finding of disability based solely on the exertional limitations, then the ALJ may use the grids as a framework, but must also consider all other relevant evidence, including the testimony of

a VE, to determine disability.  Id.; see also LaMacchia v. Barnhart, 351 F. Supp.2d 304, 308-09 (E.D. Pa. Dec. 23, 2004).

Here, the ALJ used the grids as a decisional framework, noting that the grids directed a finding of "not disabled" based on Plaintiff's age, education, and the ability to perform medium work.  Tr. at 28.  To determine the extent to which Plaintiff's non exertional limitations eroded the occupational base, the ALJ enlisted the assistance of a VE and relied on the VE's testimony to conclude that there were jobs in the economy which Plaintiff could perform.  Thus, the ALJ conducted the analysis consistent with the regulations.[15]

## IV.   CONCLUSION

The ALJ properly evaluated the medical evidence and Dr. Sagot's opinion evidence and the ALJ's decision is supported by substantial evidence.  Any error in failing to find Plaintiff's diagnosed psychosis severe was harmless because the ALJ properly considered all of the medically established limitations in crafting the RFC assessment.  The ALJ did not fail to develop the record and the evidence submitted after the ALJ's decision did not meet the sentence six new and material standard.

---

[15]As previously discussed, the ALJ's RFC assessment and hypothetical questions included the limitations that were supported by the evidence of record.  See Chrupcala, 829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise . . . it cannot be considered substantial evidence.").